'13-01-31 19:44 FROM-Bass & Associates        5205771546          T-336  P0002/0012 F-906

1127 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT

Southern____ District of _Texas____

In re Nicole Martin ____
         Debtor                              Case No. 12-38672_____
                                             Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1.   Creditor's Name: CAPITAL ONE, N.A. - BEST BUY CO., INC.

2.   Amount of the debt subject to this reaffirmation agreement:
     $ 1,419.90 on the date of bankruptcy    $ 1,419.90 to be paid under reaffirmation agreement

3.   Annual percentage rate of interest: _____% prior to bankruptcy
     _0_ % under reaffirmation agreement ( _✓_ Fixed Rate ____ Adjustable Rate)

4.   Repayment terms (if fixed rate): $ 50.00 per month for _20_ months

5.   Collateral, if any, securing the debt: Current market value: $ ____1419.90
     Description: SONY SHELF SYSTEM,IPOD,LAPTOP,WSJ,R,DRYR_____

6.   Does the creditor assert that the debt is nondischargeable? ____Yes _✓_ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. | Total monthly income from Schedule I, line 16 | $6,284.30 | 7B. | Monthly income from all sources after payroll deductions | $ 6,284.30 |
| 8A. | Total monthly expenses from Schedule J, line 18 | $6,283.58 | 8B. | Monthly expenses | $6,283.58 |
| 9A. | Total monthly payments on reaffirmed debts not listed on Schedule J | $ 50.00 | 9B. | Total monthly payments on reaffirmed debts not included in monthly expenses | $ 50.00 |
| | | | 10B. | Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $ <49.28> |

B27 (Official Form 27)(12/09)                                                       Page 3

11.  Explain with specificity any difference between the income amounts (7A and 7B):

N/A

12.  Explain with specificity any difference between the expense amounts (8A and 8B):

N/A

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

N/A
_____
Signature of Debtor (only required if
line 11 or 12 is completed)

_____
Signature of Joint Debtor (if applicable, and only
required if line 11 or 12 is completed)

**Other Information**

☒  Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: *debtor will make necessary adjustments in their budget in order to meet this objection.*

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
☑ Yes                 _____ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
_____ Yes                 _____ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

Signature _____
Jennifer Porsley

Print/Type Name of Signer's Relation to Case

B240A (Form B240A) (04/10)

Check one.
☐ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
Southern ___ District of _Texas_ ___

In re ___ Nicole Martin _____,                       Case No. 12-38672 _____
           *Debtor*
                                                             Chapter 7 _____

## REAFFIRMATION DOCUMENTS

Name of Creditor:  CAPITAL ONE, N.A. - BEST BUY CO., INC. ___

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation
Agreement, you must review the important disclosures, instructions, and definitions found in Part V of
this form.**

A. Brief description of the original agreement being reaffirmed: ___  ____     Secured revolving account _____
                                                                              *For example, auto loan*

B. *AMOUNT REAFFIRMED*:      $_____ 1419.90 ___ _____ .

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include
   unpaid principal, interest, and fees and costs (if any) arising on or before _ 1/31/13___ .,
   which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is ___ 0 _ %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate
disclosed here.

B240A, Reaffirmation Documents                                                           Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

    ☑   $ _50.00_ per month for __29__ months starting on _4/20/13_ .

    ☐   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

    Description:             SONY SHELF SYSTEM,IPOD,LAPTOP,WSHR/DRYR
    Current Market Value    $ _____ 1419.90

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?
                                          1419.90

    ☑ Yes. What was the purchase price for the collateral?    $ _____

    ☐ No. What was the amount of the original loan?    $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 1,419.90 | $ 1419.90 |
| Annual Percentage Rate | ___% | 0 ___% |
| Monthly Payment | $_____ | $ 50.00 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

    Check one.    ☑ Yes    ☐ No

B. Is the creditor a credit union?

    Check one.    ☐ Yes    ☑ No

B240A, Reaffirmation Documents                                                                    Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1.  Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income)                                   $ 6,284.30

    b. Monthly expenses (including all reaffirmed debts except
    this one)                                                               $ 6,283.58

    c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ <49.28>

    d. Amount of monthly payment required for this reaffirmed debt          $ 50.00

    *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to
    pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption
    of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No
    Presumption of Undue Hardship."*

2.  You believe that this reaffirmation agreement will not impose an undue hardship on you or your
    dependents because:

    Check one of the two statements below, if applicable:

    [ ]  You can afford to make the payments on the reaffirmed debt because your monthly income is
         greater than your monthly expenses even after you include in your expenses the monthly
         payments on all debts you are reaffirming, including this one.

    [X]  You can afford to make the payments on the reaffirmed debt even though your monthly income
         is less than your monthly expenses after you include in your expenses the monthly payments on
         all debts you are reaffirming, including this one, because:

         Debter will make necessary adjustments to live.

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

N/A [ ]  You believe this Reaffirmation Agreement is in your financial interest and you can afford to
         make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents                                                                    Page 4

PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1)   I agree to reaffirm the debt described above.

(2)   Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation
      Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V
      below;

(3)   The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and
      complete;

(4)   I am entering into this agreement voluntarily and am fully informed of my rights and
      responsibilities; and

(5)   I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 2/19/13          Signature _Nicol Martin_
                                          Debtor

Date 2/19/13          Signature _____
                                          Joint Debtor, if any

Reaffirmation Agreement Terms Accepted by Creditor:

Creditor __CAPITAL ONE, N.A. - BEST BUY CO., INC.__     C/O Bass & Associates, P.C., 3936 E. Ft. Lowell Ste 200, Tucson, AZ, 85712
              Print Name                                                    Address

_Jennifer Pursley_                          _[signature]_          2/25/13
Print Name of Representative                     Signature          Date

PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2)
this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have
fully advised the debtor of the legal effect and consequences of this agreement and any default under this
agreement.

☒ A presumption of undue hardship has been established with respect to this agreement. In my opinion,
however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit
Union.*

Date 2/22/2013 Signature of Debtor's Attorney _[signature]_

      Print Name of Debtor's Attorney     Corey L. Mills

B240A, Reaffirmation Documents                                                         Page 5

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1.   **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.   **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.   **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.   **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5.   **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

B240A, Reaffirmation Documents                                                    Page 6

6.  **When will this Reaffirmation Agreement be effective?**

a.  If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and

i.  if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

ii.  if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

b.  If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7.  **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B.  **INSTRUCTIONS**

1.  Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.  Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.  If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.  You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5.  *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C.   DEFINITIONS

1.   **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.   **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.   **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

**BEST BUY**
00015172
RICHMOND   , TX 77406
Store Phone Number 281 232 1399

SALE

Order:                Date: 09/19/11        Term ID: 063 Cashier#: 00779452
                      12:50 PM

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 5426693 | REWARD ZONE CARD | 1 | 0.00 |
| 9457731 | WHIRLPOOL 6.7CU FT 8 CYC ELE | 1 | 531.99 |
| 8518641 | DELIVERY | 1 | 0.00 |
| 9465438 | WHIRLPOOL 3.5 CF FL WASHER | 1 | 475.94 |
| 3276208 | $20 COUPON UPON APPROVAL OF | 1 | 0.00 |
| 9881768 | ROCKETFISH SMALL TILT MOUNT | 1 | 19.99 |
| 9748831 | NS-42P650-A11 PDP 720P 600HZ | 1 | 399.99 |
| 2343157 | VR-2218 CCFL 1080P 60HZ | 1 | 169.99 |

|  |  | Subtotal | 1597.90 |
|---|---|---|---|
|  |  | Tax | 131.82 |
|  |  | Total | 1729.72 |

Acct#:                6856
Payment Type: BBY CARD/HSBC
Amount: 1729.72
Card Type: PL2
Tran#: 15174604
Auth#: 059271
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL
RETURN AND REFUND POLICIES
PRINTED ON THE BACK OF THIS
RECEIPT AND POSTED IN THE
STORE. I HAVE RECEIVED GOODS
AND/OR SERVICES IN THE AMOUNT
SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE
INFORMATION AND PRICE MATCH POLICY
MAY VARY SLIGHTLY FROM IN-STORE POLICY.
PLEASE LOG ONTO WWW.BESTBUY.COM
FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

BEST BUY
00015172
RICHMOND   , TX 77406
Store Phone Number 281 232 1399

SALE

Order:          Date: 09/23/11          Term ID: 055 Cashier#: 00011233
                04:49 PM

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 5426693 | REWARD ZONE CARD | 1 | 0.00 |
| 6072377 | REWARD ZONE OFFER | 1 | 0.00 |
| 2970255 | C655DS5209/ATHL ONIIN350(ESER | 1 | 349.99 |
| 8856865 | KASPERSKY AV BOX | 1 | 0.00 |
| 8867924 | KASPERSKY AV 6 MONTH | 0 | 0.00 |

|  |  | Subtotal | 349.99 |
|---|---|---|---|
|  |  | Tax | 28.87 |
|  |  | Total | 378.86 |

Acct#:             6856
Payment Type: BBY CARD/HSBC
Amount: 150.86
Card Type: PL2
Tran#: 15178206
Auth#: 036448
Auth-CD: ELEC
Manual Tran Ind:
Signature:

Payment Type: Cash
Amount: 228

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL
RETURN AND REFUND POLICIES
PRINTED ON THE BACK OF THIS
RECEIPT AND POSTED IN THE
STORE. I HAVE RECEIVED GOODS
AND/OR SERVICES IN THE AMOUNT
SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE
INFORMATION AND PRICE MATCH POLICY
MAY VARY SLIGHTLY FROM IN-STORE POLICY.
PLEASE LOG ONTO WWW.BESTBUY.COM
FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

**BEST BUY**
00015172
RICHMOND    , TX 77406
Store Phone Number 281 232 1399

SALE

Order:                Date: 12/01/11         Term ID: 055 Cashier#: 00027080
                      11:53 AM

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 3109302 | 8GB TOUCH - WHITE | 1 | 144.99 |
| 5426693 | REWARD ZONE CARD | 1 | 0.00 |
| 6072377 | REWARD ZONE OFFER | 1 | 0.00 |

|  |  |  |
|---|---|---|
| Subtotal | | 144.99 |
| Tax | | 11.96 |
| Total | | 156.95 |

Acct#:              6856
Payment Type: BBY CARD/HSBC
Amount: 156.95
Card Type: PL2
Tran#: 15179727
Auth#: 012554
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL
RETURN AND REFUND POLICIES
PRINTED ON THE BACK OF THIS
RECEIPT AND POSTED IN THE
STORE. I HAVE RECEIVED GOODS
AND/OR SERVICES IN THE AMOUNT
SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE
INFORMATION AND PRICE MATCH POLICY
MAY VARY SLIGHTLY FROM IN-STORE POLICY.
PLEASE LOG ONTO WWW.BESTBUY.COM
FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

BEST BUY
00015172
RICHMOND   , TX 77406
Store Phone Number 281 232 1399

SALE

Order:                 Date: 06/23/12              Term ID: 003 Cashier#: 00011233
                       09:05 PM

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 6094193 | REWARD ZONE PREMIER SILVER | 1 | 0.00 |
| 9846696 | SONY MHCEC909IP HI-FI SHELF | 1 | 191.99 |

|  | Subtotal | 191.99 |
|---|---|---|
|  | Tax | 15.84 |
|  | Total | 207.83 |

Acct#:                 6856
Payment Type: BBY CARD/HSBC
Amount: 207.83
Card Type: PL2
Tran#: 15179036
Auth#: 075019
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL
RETURN AND REFUND POLICIES
PRINTED ON THE BACK OF THIS
RECEIPT AND POSTED IN THE
STORE. I HAVE RECEIVED GOODS
AND/OR SERVICES IN THE AMOUNT
SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE
INFORMATION AND PRICE MATCH POLICY
MAY VARY SLIGHTLY FROM IN-STORE POLICY.
PLEASE LOG ONTO WWW.BESTBUY.COM
FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stat., or a Statutory Terminable Individual Property Classification Agreement under 766.589) adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

## CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with Household Bank (SB), N.A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Bed Bay to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the Credit card application and the words "we", "us" and "our" refer to Household Bank (SB), N.A. located at 1111 Town Center Drive, Las Vegas, Nevada 89144. If we accept your application to open an Account, you agree that you will enjoy purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. ACCEPTANCE OF AGREEMENT:** By a) signing and submitting, or electronically or telephonically submitting the application; using or permitting others to use the Card; b) signing or permitting others to sign sales slips; or c) mailing or permitting others to make purchases by telephone, Internet, or any other means, You agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, which includes an arbitration provision.

**3. PROMISE TO PAY:** You agree to pay all amounts charged to the Account, whether incurred by you or anyone you authorize or permit, to use your Account or Card. If the Account is a joint Account, the applicant and joint applicant each agree to pay and are jointly and individually responsible for all amounts charged on the Account regardless of any divorce or other legal proceeding or any agreement that may affect liability between the applicant and the joint applicant. If either of you give us notice disclaiming liability for amounts owed under this Agreement, you may close the Account. In that event, you will continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

**4. ABILITY TO REPAY:** When you use the Account or permit others to use the Account, you represent that you have the ability to repay all amounts charged to the Account.

**5. BILLING STATEMENT:** We will send you a billing statement monthly for each billing cycle at the end of which you have a debit or credit balance in excess of $1.00, or in which a Finance Charge has been imposed. The Billing statement will show all purchases, Finance Charges and other charges credited to your Account during the billing cycle, and all payments and other credits posted to your Account during the billing cycle. The billing statement will show the amount owed on your Account. The total Amount owed is called "New Balance" on your billing statement subject to the terms of Promotional Credit Plan purchases, if any, is indicated below.

**6. PROMOTIONAL CREDIT PLANS:** The following Promotional Credit Plans may be offered from time to time as specified prior to or at the time of purchase: a) Delayed Monthly Payment Credit Plan — no Minimum Monthly Payment will be due for a specified period; b) Waived Finance Charge Credit Plan — no Finance Charges will be imposed on the purchase for a specified period, as long as the Total Minimum Payment Due is paid when due each billing cycle; c) Waived Finance Charge/Delayed Monthly Payment Credit Plan — no Finance Charges will be imposed on the purchase for a specified period and no Minimum Monthly Payments will be due for a specified period; d) Same as Cash/Delayed Monthly Payment Credit Plan — If you pay the full cash sales price of the purchase before the promotional period expires and pay the Total Minimum Payment Due when due each billing cycle, no Finance Charges will be imposed on the purchase. Each promotional service not made, Finance Charges will be imposed from the purchase date; e) Same as Cash/Delayed Monthly Payment Credit Plan — If you pay the full cash sales price of the purchase before the promotional period expires and pay the Total Minimum Payment Due when due each billing cycle, no Finance Charges will be imposed on the purchase. If payment in full is not made before that date, Finance Charges will be imposed from the purchase date; f) Minimum Monthly Payments will be due prior to the promotional period and the payment to the purchase of a specified product as long as the Total Minimum Payment Due is applied to the purchase for a specified period as long as the Total Minimum Payment Due is made that billing cycle; g) Special Repayment Factor/Reduced Rate Credit Plan — A special repayment factor will be applied to the purchase for the specified period as long as the Total Minimum Payment Due is paid when due each billing cycle. All purchases that do not fall under a Promotional Credit Plan are referred to as Regular Credit Plan purchases. **Certain terms subject to the collection of payments and finance charges may differ for Promotional Credit Plan purchases as described in the Application or this Agreement. Call 1-800-367-2310 or see the disclosures of Promotional Credit Plans at the time of purchase for more information.**

**7. FINANCE CHARGES:** (a) Finance Charges, which are part of the interest on your Account, are calculated separately for each Promotional Credit Plan and each Regular Credit Plan ("Promotional Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Finance Charge for the billing cycle is the sum of the Finance Charges for each Credit Plan, subject to the minimum Finance Charge under Section 8.

of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Nevada. We make decisions about granting credit to you from, and extend credit to you under this Agreement from, Nevada. Federal and Nevada law shall also apply to any controversy, claim or dispute arising from or relating in any way to the subject matter of this Agreement and/or your Account, including statutory, equitable and tort claims.

**29. CREDIT INVESTIGATION AND REPORTING:** You agree that we may investigate your credit, employment and income records and verify your credit references and also may report to credit reporting agencies, merchants, and other creditors the status and payment history of your Account.

**30. DISPUTED ACCURACY OF CREDIT REPORT:** If any specific information related to your Account, transactions or credit experience with us is inaccurate, you may notify us and request us to correct the inaccurate information (after confirmation of the alleged error) reported to any credit reporting agency by writing to us at HRS USA, P.O. Box 15521, Wilmington, DE 19850-5521.

**31. UPDATED FINANCIAL INFORMATION:** Upon request, you agree to promptly give us accurate updated financial information about yourself.

**32. DELAY TAKING ACTION:** We will not lose any of our rights under this Agreement if we delay taking action for any reason. To the extent allowed by law, we may take other action not described in this Agreement, and by doing so will not lose our rights under this Agreement.

**33. CHANGE OF NAME, ADDRESS, OR EMPLOYMENT:** You agree to give us 10 days advance notice of any change in your name, mailing address, telephone number, or place of employment. You agree the Department of Motor Vehicles may release your residence address to us should it become necessary to locate you.

**34. ASSIGNMENT OF ACCOUNT:** We may sell, assign, or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account.

**35. SEVERABILITY:** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule or regulation, all other provisions of this Agreement will remain valid and enforceable.

**36. NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If you are married, you may apply for credit in your own name.

**37. NOTICE FOR FLORIDA RESIDENTS: You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.**

**38. NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency if a report was obtained.

**39. NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department: 1-800-522-3330.

**40. NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**41. NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

**The information about the costs of the Card described in this Cardholder Agreement and Disclosure Statement is accurate as of November, 2004. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.**

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## Español

**AVISO PARA LOS RESIDENTES DE WISCONSIN CASADOS:** Ninguna disposición de un convenio sobre bienes matrimoniales (incluyendo un Convenio de Clasificación de Bienes Maritales Terminable Estatutariamente bajo la Sec. 766.588 de los Estatutos de Wisconsin, o de un Convenio de Clasificación de Bienes Personales Terminable Estatutariamente bajo la Sección 766.70) tiene un efecto adverso para los intereses del acreedor, a menos que el acreedor, antes del momento en que se conceda el crédito, reciba copia del convenio, relación o decreto, o tenga conocimiento real de la disposición adversa cuando se contrae la obligación para con el acreedor.

## ACUERDO DE TARJETAHABIENTE Y DECLARACION INFORMATIVA

**1. GENERAL:** Cada persona que firme y remita o que remita electrónicamente o telefónicamente una solicitud de cuenta de tarjeta de crédito ("Cuenta") como solicitante o co-solicitante, solicita una cuenta con Household Bank (SB), N.A., una asociación bancaria nacional domiciliada en Las Vegas, Nevada, y solicita una o más tarjeta(s) de crédito con el nombre y el logotipo de Best Buy para que sea(n) usada(s) en relación con la Cuenta. La palabra "Tarjeta" significa cualquier tarjeta de crédito emitida a usted o a un usuario autorizado de su Cuenta. En este Acuerdo, las palabras "usted" y "su" se refieren a todas las personas mencionadas en la solicitud de tarjeta de crédito y las palabras "nosotros", "nos" y "nuestro" se refieren a Household Bank (SB), N.A. domiciliado en 1111 Town Center Drive, Las Vegas, Nevada 89144.

Si nosotros aceptamos su solicitud para abrir una Cuenta, usted conviene en que comprará bienes y servicios solamente para fines personales, familiares y domésticos, a los comerciantes que acepten la Tarjeta.

**2. ACEPTACION DEL CONVENIO:** Al a) firmar y remitir o que remitir electrónicamente o telefónicamente la solicitud, usar o permitir a otros que usen la Tarjeta; b) firmar o permitir a otros que firmen recibos de venta; o c) hacer o permitir a otros que hagan compras por teléfono, Internet u otros medios — usted conviene en los términos y condiciones del Convenio de Tarjetahabiente y de Declaración Divulgatoria que incluye una disposición acerca del arbitraje.

**3. PROMESA DE PAGO:** Usted conviene en pagar toda cantidad cargada a la Cuenta, ya sea contraída por usted o por cualquier persona a la que usted autorice o permita usar su Cuenta o Tarjeta. Si la Cuenta es una Cuenta mancomunada, el solicitante y el solicitante conjunto, cada cual, convienen en pagar y son responsables mancomunadamente y solidariamente de todas las cantidades cargadas a la Cuenta, independientemente de un divorcio u otro procedimiento legal o acuerdo que afecte la responsabilidad entre el solicitante y el solicitante conjunto. Si uno de ustedes nos da aviso de que renuncia a su responsabilidad por las cantidades adeudadas bajo este Convenio, nosotros podremos cerrar la Cuenta. En ese caso, usted seguirá pagando el saldo pendiente bajo los términos de este Convenio. No obstante, usted no podrá efectuar cargos nuevos a la Cuenta.

**4. CAPACIDAD PARA PAGAR:** Cuando usted use la Cuenta o permita a otras personas que usen la Cuenta, usted declara que tiene la capacidad y el propósito para pagar todas las sumas cargadas a la cuenta.

**5. ESTADO DE CUENTA:** Nosotros le enviaremos mensualmente un estado de cuenta por cada ciclo de facturación en que usted tenga un saldo de débito o crédito en exceso de $1.00, o en que se haya impuesto un Cargo de Financiamiento. El estado de facturación indicará todas las compras, cargos financieros y otros cargos u honorarios, incluido el seguro de crédito o la cancelación de deuda (si corresponden), y todos los pagos y otros créditos asentados en su cuenta durante el ciclo de facturación. El estado de cuenta indicará la cantidad adeudada en su Cuenta. La cantidad total

**BILL OF SALE**

This BILL OF SALE (the "Bill of Sale") dated May 1, 2012, is by and among HSBC Finance Corporation, a Delaware corporation, HSBC Retail Services, Inc., a Delaware corporation, HSBC Bank Nevada, N.A., a national banking association, HSBC Card Services Inc., a Delaware corporation, HSBC Receivables Acquisition Company I, a Delaware corporation and HSBC Receivables Funding Inc. II, a Delaware corporation (each, a "Transferring Entity"), in favor of Capital One Bank, National Association, a national banking association ("CONA"), and Capital One Bank (USA), National Association, a national banking association ("COBNA"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement (as defined below).

WHEREAS, each of CONA and COBNA is a wholly owned Subsidiary of Capital One Financial Corporation ("Purchaser");

WHEREAS, Purchaser, HSBC Finance Corporation, HSBC USA Inc. and HSBC Technology & Services (USA) Inc. are parties to that certain Purchase and Assumption Agreement, dated as of August 10, 2011 (the "Agreement");

WHEREAS, pursuant to Section 2.1(a) of the Agreement, effective as of the Effective Time, each Seller, as applicable, is to sell, convey, transfer, assign and deliver, or cause one or more of its Subsidiaries to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser is to purchase and accept from each Seller or its applicable Subsidiaries, all of each such Selling Entity's right, title and interest in, to and under the Acquired Assets that are tangible personal property (the "Applicable Acquired Assets");

WHEREAS, pursuant to Section 10.2 of the Agreement, Purchaser may assign its right under the Agreement to acquire any asset to any wholly owned Subsidiary without the prior written consent of any other party to the Agreement and has assigned its right to acquire the Applicable Acquired Assets to CONA or COBNA, as applicable; and

WHEREAS, pursuant to Sections 3.7(c) and 3.7(n) of the Agreement, the parties desire to execute and deliver at the Closing this Bill of Sale to evidence the sale, conveyance, transfer, assignment and delivery of the Applicable Acquired Assets owned by the Transferring Entities to Purchaser and/or its wholly owned Subsidiaries as of the Closing Date.

NOW, THEREFORE, in consideration of the payment by Purchaser and/or its wholly owned Subsidiaries of the Purchase Price and the assumption by Purchaser and/or its wholly owned Subsidiaries of the Assumed Liabilities for the sale, conveyance, transfer, assignment and delivery of the Acquired Assets owned by the Selling Entities, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Transferring Entity, intending to be legally bound, does hereby sell, convey, transfer, assign and deliver to CONA and COBNA, and their successors and assigns, in accordance with the allocations set forth on Annex A hereto, all of such Transferring Entity's right, title and interest in, to and under the Applicable Acquired Assets owned by it free and clear of all Liens (except for Permitted Liens); TO HAVE AND TO HOLD unto CONA and COBNA (in accordance with the allocations set forth on Annex A hereto), their successors and assigns, as applicable, to their own use and benefit forever, all of the Applicable Acquired Assets hereby sold, assigned, transferred, conveyed and delivered as of the Closing.

**THE PARTIES FURTHER COVENANT AND AGREE AS FOLLOWS:**

a.   From time to time each Transferring Entity and its successors and assigns shall, and shall cause its Subsidiaries to, without further consideration, cooperate, execute and deliver all such further bills of sale, assignments or other instruments of conveyance and transfer, and take such actions, all as may be reasonably requested by CONA and COBNA, and their successors or assigns, in order to carry out the sale, assignment, conveyance, transfer and delivery of the Applicable Acquired Assets covered by this Bill of Sale as contemplated in this Bill of Sale and the Agreement.

b.   This Bill of Sale shall become effective as of the Effective Time at the Closing pursuant to the terms of the Agreement. Nothing in this Bill of Sale shall be deemed to constitute an agreement to sell, convey, transfer, assign or deliver to Purchaser or its Subsidiaries any Applicable Acquired Asset (or portion thereof) prior to the Effective Time.

c.   This Bill of Sale is given pursuant to the provisions of the Agreement and the sale, conveyance, transfer, assignment, and delivery of the Applicable Acquired Assets hereunder are made subject to the terms and conditions of the Agreement and shall be construed consistently therewith. Nothing in this Bill of Sale, express or implied, is intended to or shall be construed to supersede, modify, replace, amend, rescind, waive, expand or limit in any way the rights of the parties under, and the terms of, the Agreement. In the event that any provision of this Bill of Sale is construed to conflict with a provision in the Agreement, the parties agree that the provision in the Agreement shall be controlling.

d.   The following Sections of the Agreement are incorporated into this Bill of Sale by reference, to be applied and construed consistently with the application of such Sections in the Agreement as if such Sections were set forth herein: Sections 10.1, 10.2, 10.3, 10.4, 10.5, 10.6, 10.7, 10.10 and 10.13.

*(Signatures Appear on the Following Page)*

IN WITNESS WHEREOF, the parties have executed this Bill of Sale as of the date first written above.

[signature pages have been distributed separately]

HSBC FINANCE CORPORATION

By: _____
Name: Gregory T. Zeeman
Title:   Executive Vice President and
          Chief Operating Officer, USA

HSBC RETAIL SERVICES INC.

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial
Officer and Treasurer

HSBC BANK NEVADA, N.A.

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial
Officer and Treasurer

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

HSBC CARD SERVICES INC.

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial
Officer and Treasurer

HSBC RECEIVABLES ACQUISITION COMPANY I

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial
Officer and Treasurer

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

HSBC RECEIVABLES FUNDING INC. II

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial
Officer and Treasurer

CAPITAL ONE NATIONAL ASSOCIATION

By: _____
Name: Murray P. Abrams
Title: Executive Vice President,
Corporate Development

CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION

By: _____
Name: Murray P. Abrams
Title: Executive Vice President,
Corporate Development

## Annex A

### Allocations

1.   The following Applicable Acquired Assets are hereby assigned to COBNA but only to the extent such Applicable Acquired Assets relate to the products set forth on Schedule A hereto (provided that any such Applicable Acquired Asset that is not fully separable between COBNA and CONA based on the products set forth on Schedule A shall not be assigned to COBNA and is instead hereby assigned to CONA in accordance with paragraph (2) below):

*Acquired Assets*

i.   All CRS Accounts and all Gross Receivables and Accrued Interest and Fees related to the CRS Accounts, and all Charged Off Accounts and the right to any recoveries or collections with respect thereto;

ii.   All CRS Account Agreements, pending applications for CRS Accounts and outstanding solicitations for CRS Accounts;

iii.   All loans associated with CRS Accounts (other than the Excluded Accounts);

iv.   The right to receive Interchange Fees and annual or other fees from Borrowers under the CRS Accounts, including the *pro rata* portion of any annual or other fees from Borrowers under the CRS Accounts for any period after the Effective Time;

v.   The *pro rata* portion of any fees paid in connection with the CRS Business for any period after the Effective Time;

vi.   the Books and Records and Cardholder List;

vii.   All BINs and ICAs used for the CRS Accounts;

viii.   Any security deposits related to Acquired Assets (if any);

ix.   Rights to provide the Enhancement Services and the right to provide enhancement services currently offered by the Sellers in connection with the CRS Business through third parties or Affiliates of Sellers that are not Selling Entities; and

x.   The Other Specified Assets that are: (1) loans without recourse, (2) contra credit balances, (3) other miscellaneous receivables and (4) unbilled and accrued interest less the *pro rata* portion of annual or other fees.

2.   All of the Applicable Acquired Assets other than (i) the Transferred Intellectual Property and (ii) the Applicable Acquired Assets that are transferred to COBNA pursuant to paragraph (1) above are hereby transferred to CONA.

Schedule A

Products

1. American DreamCard
2. Cash Rewards
3. Client 5221
4. DAMARK (containing the Damark Visa logo but not the Damark Internat'l – Inactive logo)
5. Direct Merchants Bank Discover Network Card
6. Direct Reward Platinum Discover Network Card (Organic & Secondary)
7. Direct Rewards Platinum MasterCard
8. DMB
9. Household Bank
10. Household Bank - unsecured
11. Household Bank MasterCard (containing the HSBC MasterCard logo but not the Household Bank MasterCard logo)
12. Household Bank Refund Rewards Buying Card
13. Household Bank Secured
14. Household Bank Visa
15. HSBC
16. HSBC American Express
17. HSBC Discover Network Card
18. HSBC Platinum MasterCard
19. HSBC Platinum Visa
20. Metris Co
21. Orchard Bank Standard Secured
22. Orchard Bank Unsecured
23. Platinum MasterCard - Unbranded
24. Platinum Visa - Unbranded
25. Premier World MasterCard
26. Red Hat Society